May it please the court. John LeMaster with Riley, Carlock & Applewhite. On behalf of Abbott Laboratories, the defendant appellant in this case. We've raised four issues in our brief, but before I get to any of those, the court last week gave us an order that I'd like to address first. And the court said the counsel should be prepared to address whether the following question should be certified to the Arizona Supreme Court for decision. And that issue is, does the Arizona Groundwater Code, ARF Section 45, 518A, include an implied private right of action for damages for the withdrawal of groundwater based on negligence per se? And if so, does that right include a right to the maintenance of groundwater basins, water table, at any specified height? Abbott's position is, is that question need not be certified because the issue has been waived. And because it's been what? Waived, Your Honor. And I want to explain that in a moment and go through the record. However, if the court feels that it hasn't been waived and that issue is dispositive, then that issue should be certified to the Arizona Supreme Court for decision so that the issue can be properly briefed and addressed and give the groundwater users of Arizona the right to weigh in on this through amicus brief as well as the Department of Water Resources. ARF Section 45, 518A is the statute that Abbott concededly violated. It received a permit to withdraw an emergency groundwater dewatering permit. It received that permit for two acre feet, a little over, and it withdrew by its records estimates 122 acre feet by the Brady's estimates and perhaps the trial court more than that. That issue has never been contested in this case. In fact, Abbott stipulated with the Department of Water Resources that it violated its permit by exceeding in excess of that. Abbott also stipulated that it filed a report for its 1997 groundwater withdrawals that was inaccurate. It showed zero water had been withdrawn and that was inaccurate. Abbott also stipulated with the Arizona Department of Water Resources that it failed to file a report for its 1998 withdrawals in violation of statute. Abbott then entered into a consent order with the Department of Water Resources. The Department of Water Resources found those violations and Abbott stipulated and Abbott was fined about $6,500. Well, now the district court didn't get to the doctrine of reasonable use, right? It said it didn't apply something along those lines? Yes. What the district court found is it relied on two cases in error and it found first it relied on the FICO case and it relied on that case erroneously and then it relied on the Paloma case. And if I can address both those in order why the district court erred. Under the doctrine of reasonable use, which is a common law doctrine, a property owner can withdraw as much percolating groundwater beneath their property as they find so long as the water was withdrawn to make a beneficial use of one's property. And that is the Brister v. Cheatham case. What you can't do and what the cases say you can't do is you can't withdraw that water not to make a beneficial use from the land which it's withdrawn. And the cases are if you transport that water. By selling it or irrigating another property or things along those lines. Correct. So if, you know, I guess when you look at the facts of this case and just, you know, that you do all your legal analysis and then you see where it takes you. Now, if you assume that the basement's a reasonable use, but in order to do the basement you have to get the permit. And so you have this agency determining, you know, how much you can pull out. And the record seems to be undisputed that your client pulled out too much. Now, if your client had a right to do the basement in the first place but then also has a duty to comply with the permit, if it had complied with the permit maybe they wouldn't have dewatered the other property. So if they can show that, you know, what they did was the cause of dewatering the other property is, you know, where does that put us? And it's a whole different issue whether violating the permit creates a, you know, a private cause of action. I don't see any authority out there right now for that fact. It would seem that it's an enforcement statute that exactly what you're talking about is they get fined $6,500 and all of that. Well, that's not going to be any consolation to the people around that their property gets dewatered. You see, I'm seeing, okay, so it's the next property. Maybe they could do that. Well, let's say for 50 square miles what they did, would that then be a reasonable use of your property if you were taking up all their groundwater for 50 square miles? The law is that withdrawing groundwater to make a beneficial use of one's property, as long as that is happening you can pump your neighbor dry and they have no remedy. That's the law. That's the law in Arizona. But what's reasonable? What's reasonable is to make beneficial use of one's property. The cases, and we've cited the cases where dewatering excavations for mining purposes, for rock quarrying to develop one's property is a reasonable use. You know what the owner's going to say when he comes out? Sure, you can pump him dry, but you've got to put the water in a place where it will be reabsorbed. And here the water was passed off and thrown into nothingness. There are several cases cited which were relied on by the Arizona Supreme Court in Bristol that says no, that's not accurate. For example, in Evans v. City of Seattle, which was relied upon in Bristol when it adopted the reasonable use doctrine, that was a case where the City of Seattle had a gravel pit and water was infiltrating their gravel pit. They put in a canal to dewater the gravel pit, and the water went off the property, diverted away from the plaintiff's property, as well as the City of Seattle's, and ran away. The court said, under the doctrine of reasonable use, they're making reasonable use of their land by mining their gravel pit. In addition, you've got cases that say, it's reasonable so long as it does not unreasonably interfere. And here, he's arguing that it unreasonably interferes because his palm trees can't get to the roots, and they can't get to the roots, and they can't get to the water, and they can't get to the water because the table has been lowered, and the table has been lowered much more than the, well, I would call it the license and the permit to lower, and the fact that it has been lowered much lower was not brought to our attention. We were prevented from knowing it because steps taken by Abbott to make sure we didn't know it. Well, then, I mean, if they had known it, then they could have maybe done some other kind of irrigation. So that's the… Well, let me try and address those questions in order. One is in the… And by the way, I want you to know, this isn't my view of the case, it's what I think the record shows, and that's what I'm talking about. And I understand, Your Honor. One is, the first question is, they're going to argue it made it so they couldn't irrigate their pecan trees by having the taproot go down. City of Seattle case, which was cited by Bristow with approval, they ran out of domestic water. They couldn't get water for their house. But you know that, right? Well, you know that in time to do something. They knew it when it happened in the City of Seattle case. They knew it happened, I believe it's the Bayer case side, where it caused sinkholes on the plaintiff's property. Yes, on the plaintiff's property. In that case, they knew it when it happened. And I'd like to just step back for a minute and say that the American rule, which is a doctrine of reasonable use, is a doctrine that has been in this country for years, and it's a modification from the so-called English rule, which allowed unlimited use of the water, even for selling it and using it maliciously. What the American courts did is they tempered that, and they said the rule is as long as you use, or excuse me, as long as you withdraw the water to make beneficial use of your property, even if you pump your neighbor dry, even if it ruins their agriculture, that's not a liability-causing event under the common law. And the plaintiffs only brought common law claims. Now, the court found to the contrary, I concluded district court to the contrary, because it had a different view of the common law, right? Again, the district court relied on two cases. One was the FICO case, which water was transported off and used on another property, which is not the fact here. The water may have went away from the property, but it was withdrawn to make beneficial use of the property from which it's withdrawn. The other case that the district court relied upon is the Paloma investment case. In that case, there was a contract between a buyer and a seller of a property, and the seller wanted a royalty interest in future groundwater sales from that property that would come back to the seller. A subsequent purchaser said that that agreement did not run with the land, and the court of appeals said, well, it's a royalty interest, and royalty interests are property interests that run with the land, and it's no different than a mining royalty interest or an oil royalty interest. And the district court said because of that case, there's a property interest in groundwater. However, the Arizona Supreme Court says, no, that's not the case. In fact, the Arizona Supreme Court in Town of Chino Valley 2 said that ownership of groundwater prior to its withdrawal has been shown to be legally fallacious. It said it held in Arizona a landowner has no property right in groundwater prior to its withdrawal. Then again, in the Gila River adjudication, which we've cited in the papers, the Arizona Supreme Court again said that a landowner has no right to future groundwater. What the right is is a use of fructory interest where all property owners have the right to withdraw groundwater if it's beneath their property to make reasonable use of their land. And if that impacts any other landowner around there, there is no liability-causing event under the common law. So your position would be then, if I understand it correctly, the only way that, well, it would be the plaintiffs and the appellees, I guess, at this point. The only way they could prevail would be that it was not a reasonable use. Correct. And otherwise, even though your client did violate some regulations and was wrong to do that, your client still was engaged in making a reasonable use of the property, had a right to do that, now may have to pay fines otherwise. And so while bad things happen to the plaintiff, there would be no remedy for it unless if there was a determination that negligence per se on violating the permit was the basis for a cause of action, which right now there is no case authority for that. Am I getting it right? There is no case for that. But again, negligence per se. Let me back up again. In 1980, the Arizona legislature enacted the Groundwater Code, and they did so in response to the FICO case, which I've discussed before. And the reason they did it was to address transportation of groundwater within the same sub-basin. And although that was a violation of common law or an unreasonable use, in fact, the legislature said if you withdraw groundwater and transport it within the same sub-basin, you can do that and not even be subject to payment of damages. If you transport it between sub-basins, you couldn't do that at the common law either. They said you can do it, but that is subject to payment of damages. So what the legislature did is it overruled the FICO case. But in addition, they wanted to manage groundwater by having these permitting obligations. And if we look at the statute where the legislature declared the intent of the statute, it's ARS section 45401. 45401? Yes, Your Honor. All right. And that's where the legislature found that one of the reasons it set forth its policy, and it says that the withdrawals of groundwater are threatening to destroy the economy in certain areas of this state and is threatening to do substantial injury to the general economy and the welfare of the state and its citizens. And in the exercise of its police power, it put in these regulations, and that's what the town of Chino Valley did. It did not overrule the common law of reasonable use. The town of Chino Valley case holds that. What it did is it put in regulations regulating it for the general welfare of the state's economy. But it did not overrule the doctrine. In fact, the Arizona District Court in Cherry v. Steiner, which is cited in the paper, said the doctrine of reasonable use still exists in Arizona, and that case was affirmed by the Arizona Supreme Court. Now, in this case, didn't the district court conclude that the plaintiff didn't have a right to recovery, in this case under the groundwater code? Yes, they did, and that would be where they said that they waived that issue in the record, and that's excerpt of record, I believe, 12, which is a March 31st district court order. Now, is that what you depend on when you say it's been waived? Yes, not only that. It's not only been waived because of their waiver in the district court, but if you look at their brief, they never argue. You mean brief to this court? Brief to this court, a negligence per se action. They never argue an implied right of action. They never cite any case, the Tellez case, which was cited before. It's never cited in their briefs. And then there are other cases actually implying rights of action under statutes, not here. They cite none of those cases. Let me ask you, in your view, this might be new to you, but how does the doctrine, which is well-established also, that we can affirm the district court on any ground supported by the record, how does that play into this groundwater claim? Obviously, the court can affirm the district court for any reason set on the record, but also the court's policy is not to address arguments that have been waived below or waived on appeal, and that has been waived on below and waived on appeal. We have not had the opportunity to address that issue in briefing on the negligence per se or an implied right of action. Go ahead. And one of the policies of this court in having that rule is to allow us to address that through briefing, and it hasn't happened. And if I might just say, Mr. Master, you've got a slight disadvantage because you haven't argued yet, but when he argues, I'll expect he's going to say it wasn't negligence anyway. Negligence has nothing to do with it. Because you didn't withdraw negligently, you withdrew intentionally. You knew what size basement you wanted to build, but you didn't know how far below the water table was going to run and how far you had to bring it down in order to do it. When you discovered after getting a permit you had to go deeper than you thought and there was more water than you thought, you took it out of there. But negligence didn't have anything to do with it, so there's no negligence theory here. It was intentional, wasn't it? If you look at the pretrial statement, the only theories they rave, and that's, I believe, excerpt of Record 13, I believe, is negligence and nuisance. The only addresses-ish that were still left for trial were negligence and nuisance. But even if you assume intentional, the doctrine of reasonable use still applies. We're not going to assume anything, but this record shows intentional, does it? The district court found that Abbott intentionally violated statutes correct. I can't get around that, but that violation has nothing to do with plaintiffs or nothing to do with their cause of action. I'd like to reserve the balance. I'd like to reserve the balance. All right, thank you. Thank you. Thank you. Good morning. May it please the Court. I'm Brad Keough, and I represent the appellees, the Bradys. I'd like to directly answer the Court's question in its order of November 9 as to whether the Court's question should be certified to the Arizona Supreme Court. The Bradys' answer is a distinct no, and there are five substantive reasons why. The first is, and I've submitted to the Court this morning, a copy of the two statutes I'd like to talk about, 45-545 and 45-635. Each of your honors should have your set of those two statutes. I think it would be helpful if each of your honors just put them side by side because I would like to compare and contrast them. Because the first and most formidable reason why the Court's question need not be certified to the Arizona Supreme Court is because 25 years ago, when the Arizona legislature promulgated the Arizona Groundwater Code, it established two separate statutes, which the Court has before it, what Judge Callahan just asked counsel, how do you distinguish between a remedy for the injured landowner who has been harmed by someone who is pumping in violation of their permit versus sanctioning or penalizing the permittee who has illegally pumped in violation of the permit? And what the legislature did 25 years ago in the Arizona Groundwater Code said, look, under section 545, the title of that statute is Damage Rules Applicable to All Transportation of Groundwater. And the legislature talks about in any action, it's an unfettered statute, in any action to recover damages, neither injury nor impairment of the water supply of any landowner shall be presumed. So what this statute addresses is the nature and extent, as we see in subsection B, the nature and extent of an injury to a landowner's water supply. And inherently in this statute is that injured landowner's action to recover damages arising out of the illegal transportation of groundwater. This is the 25-year-old statutory remedy for an injured landowner to recover damages to injury or impairment to his use of fruit right of the groundwater. Now when we compare and contrast that to section 635, which the court has before it, this addresses Judge Callahan's question. Here is the statutory remedy for the director of the Arizona Department of Water Resources to penalize a permittee who has pumped illegally in violation of the permit. Are there cases under 45-545 that have applied this section to uphold a claim for damages? Not to my knowledge, Your Honor. In other words, it's never been used in the 25 years? Not to my knowledge. And so when the court looks at section 45-635, section A talks about a person who has been determined pursuant to section 634 to have pumped in violation of the permit. When we look at section 634, that sets up a huge administrative hearing process for the Department of Water Resources to initiate against someone like Abbott who illegally pumped in violation of their permit. Section A-2 says there's a civil penalty. The title of this section is violations, civil penalties. There's a civil penalty to be assessed of $10,000 per day. And then the crucial aspect of section 635 that I really need the court to focus on is subsection B. What does the legislature say needs to happen when the Department of Water Resources believes that someone like Abbott has pumped illegally in violation of their permit? Subsection B, an action to recover penalties, not damages, an action to recover penalties under this section shall be brought by the director in the superior court in the county in which the violation occurred. So you think it's pretty clear that there is no private cause of action under, that the director is the one that penalizes for the pumping on that. You have to go under the other section. Absolutely, Your Honor. That the Department of Water Resources by the Arizona legislature 25 years ago when promulgating the code itself in 1980 said, look, DWR, if you believe one of your permittees is being, is pumping in violation of that permit, then you have to initiate an administrative proceeding under section 634 and to recover the civil penalties that were assessed under section 634. Under 635, you have to institute an action to recover those penalties in the state superior court. Now, what's your response to Mr. LeMaster's argument that you waived any rights under the groundwater code twice, in the trial court and here? We didn't waive anything. As I addressed in my brief, Judge Tachima. Well, you did. Well, the district judge thought you did. Well, what the court, I would direct the court's attention to excerpt of record 1 of the Brady's, page 5, beginning on line 9, because there the district court addresses this very issue. And what happened is the Brady's. What are you talking about? I'm talking about excerpt of record 1, page 5, beginning on line 9, where the district court addresses this issue that Mr. LeMaster is characterizing as a waiver. And all that happened is the Brady's filed their lawsuit for damages due to the destruction of their aquifer. Abbott says we're statutorily immune from liability under 45-541. If you look at 45-541, which they've cited repeatedly, it's on page 32 of their opening brief, where they cite lines 3 to 5 of their opening brief, page 32, they cite section 541 and say they're statutorily immune from liability. Why? Because they say 541 provides that groundwater withdrawn pursuant to a permit may be transported without payment of damages within a sub-basin. Well, the problem, when they raise that issue and they file a motion for judgment on the pleadings, saying as a matter of law, we're statutorily immune, all the Brady's did was say you aren't statutorily immune under 45-541 because that only grants immunity to honest permittees who are pumping pursuant to their permit, not in violation of their permit, and you have to be deemed to have been transporting a statutorily defined word under section 402, transporting groundwater. And section 402 subsection 37 defines the word transportation as taking water from the point of withdrawal to the point of use, and inherent within that definition is the point of beneficial use. So all the Brady's did in the trial court was say, well, look, Judge, if they're filing a 12B6 motion on us, alleging that they're statutorily immune and my complaint fails to state a claim as a matter of law, they're not statutorily immune, they were pumping in violation of their permit, not pursuant to it, and they were not statutorily defined transporting that groundwater, they were pumping it down a ditch a mile away from the road. All right. Let's assume all that has to do with nothing but immunity. Did you raise a claim in the district court that you're entitled to recover under the groundwater code? No. Separate from the common law? No. It was, as the trial court said, well, I don't find any case law under section 545 that there's a private right cause of action for damages, but the trial court, in essence, said what the Brady's are saying to this court. It doesn't really matter whether or not there's a private right cause of action. So you're not. Because it's a common law claim. You're not pursuing any supposed private right of action under the groundwater code on this appeal, right? No. We filed a common law claim. They defended themselves with a statutory immunity defense under section 541, and all we did was say that statute doesn't give you immunity because you have to be pumping pursuant to your permit and transporting the groundwater. You were doing neither. So we're not. I still don't see how we get around the reasonable use doctrine here, and that's what I need help on because, obviously, I'm disturbed. I'm disturbed by the appellant's conduct, but the question is always what's the remedy for a wrong, and some wrongs there's no remedy for, and that's what I need your assistance on here. Thank you, Your Honor. I would say first and foremost the remedy is section 545, which just says if any actions to recover damages due to the injury of your water supply, here's the parameters of that, whereas section 635 says the Department of Water Resources must file a complaint in state court to go after the recovery of the civil penalties, and I would ask the court to compare and contrast that. What Abbott is saying to this court is, well, hey, we got penalized 6,000 bucks for destroying the Brady's Orchard and destroying their livelihood after 50 years of farming. That's it. That's all we get hit with because of what we did. Well, Your Honor, it touched upon that. What if it was Del Monte Farms? He's saying because of what they did and because of how they pleaded. He's not just saying because of what was done. He's saying because of the way you pleaded. As I understand the argument you're making, you brought the common law action. He defends with the statute. You are answering you can't defend with that statute because you didn't comply with it, so we're back at common law. And then the judge is asking you what is the remedy then at common law, and what is the remedy? The remedy is what the trial court said it was, a common law claim for negligence and or nuisance, and do we fulfill the duty breach causation damage elements of that claim? Do we fulfill the Graber v. City of Phoenix elements for a nuisance claim? And that's why the court said, you know, I'm going to find at least preliminarily that there's no private right cause of action under Title 45 because it wasn't initially pled as a breach of statute claim, but the trial court said it doesn't really matter. There still is under the doctrine of reasonable use the common law inquiry that must be made, and that's on Excerpt of Record 1, page 6. Again, on line 1, where the court says, however, finding that plaintiffs failed to meet the statutory criteria does not end the inquiry of what the defendants owed plaintiffs the duty not to destroy their farm. Well, let's say that just for the moment a hypothetical, that an appellant had not violated its permit and was building a basement, and that completely dewatered appellee's property. Would you have, I mean, appellee would be damaged still, but there was no violation, and arguably when you look at the cases, a basement should be of reasonable use as opposed to it wasn't carrying, you know, it's not irrigating other property, it's not, but let's say that that ended up dewatering. Would the plaintiff be without a remedy there? Yes, and you know why, Judge? Because under 45-541, the legislature 25 years ago said, with regard to transportation of groundwater within a sub-basin, which is what happened in this case, groundwater withdrawn pursuant to a permit may be transported without payment of damages within a sub-basin. Now... Wait a minute, here it was, it remained within the sub-basin? Yes. I thought it was transported outside the sub-basin. But it's still within the general sub-basin of the active management area. So that's why this habit in both Section 541 saying we've got statutory immunity, we transported the groundwater within a sub-basin, and I kept saying into the trial court, they don't have statutory immunity, they weren't doing it pursuant to a permit, they were doing it in violation of their permit, and they weren't transporting it to a beneficial point of use. So to answer Judge Callahan's question, yes, there would be no remedy. Why? Because of Section 541. But we have to take one step back. Why would there be no remedy for the Brady's in that case? Because the only way you can get a dewatering permit under the Groundwater Code is in Section 518A. And what does DWR have to conclude before it can statutorily give you your dewatering permit? One thing they must conclude under A3 is the groundwater to be withdrawn pursuant to the permit will be used beneficially. The second thing under A4, dewatering will not harm any person permitted to withdraw or use groundwater. So it stands to reason that all the hydrologists at DWR get a permit application in from someone like Abbott saying, hey, we want to withdraw 2.07 acre-feet of water over four months in this area. The hydrologists go out there and do their thing with their divining rods or whatever and say, you know, we conclude that dewatering the aquifer, that amount, a mere 2.07 acre-feet, over four months will not harm any other person permitted to withdraw groundwater. And because you, Abbott, in your application said we're going to take all that pumped groundwater and pour it into retention basins right there on our property so it can go right back into the ground, DWR concludes under A3 the groundwater will be used beneficially. So then we get to Section 541. Yeah, if you're pumping pursuant to that permit, whereby statutory definition DWR has already concluded you're not going to harm anybody else by pumping that amount over that period of time, and number two, you're going to put the pumped water to beneficial use, yeah, if you do what you promised and represented to do, what you convinced DWR you were going to do so they'd give you a permit in the first place, if you do all that, and then if you transport the groundwater for beneficial use into your retention basins as you said you were going to do, then under 541... So DWR can only give a permit if it's not going to harm anyone? Yes. Under Section 518.84, the director may issue a temporary permit. If the director determines that, 1, 2, 3, 4, DWR will not harm any person permitted to withdraw groundwater. And that's the whole point of our application. And are you permitted to withdraw groundwater? We apply to DWR to withdraw groundwater. But you don't have a permit. That's right. So you're not permitted to withdraw groundwater. The Brady's were farming their land. But that statute only applies to persons permitted to withdraw groundwater and you're not permitted to withdraw because you don't have a permit. That's right. It can harm you because you're not permitted to withdraw. In other words, they make that determination at that point in time when the application is made and if you're not permitted... My question was relative to Abbott. If you're not permitted to withdraw groundwater, I know, but Abbott can't withdraw groundwater. If somebody else permitted to withdraw, it's going to be harmed. And you're not to someone else permitted to withdraw. I misspoke, Mr. Sheehan. The Brady's were permitted under... They had a permit? ...groundwater rights. They had a permit? They are the protected class. No, they had a permit? Yes, they had a permit. I didn't understand them to have a permit. They had a permit. They're part of the protected class. I want to focus on this Doctrine of Reasonable Use because Abbott has fundamentally misstated what the Doctrine of Reasonable Use is. I want to cite to the Court two things. One is the Arizona Supreme Court's decision in the Farmer's Investment v. Beckley case that is cited on page 36 and 37 of my brief. That defines the Doctrine of Reasonable Use. Page 35 and 36? 36 and 37, Your Honor. Abbott says the Doctrine of Reasonable Use means I can pump the heck out of the aquifer, destroy the farmers for miles around me, as long as I'm doing something reasonable with my land. And here I was building a factory, so hey, that's reasonable, which under the Deccan I could do anything to my land except build an illegal enterprise and say it's a beneficial use of my land. But that's not the Doctrine of Reasonable Use. The Doctrine of Reasonable Use is whether you're putting the pumped water to a beneficial use on your land, not whether you're using the land for a beneficial purpose. And the Supreme Court said, as defining the Doctrine of Reasonable Use, it says the Doctrine gives property owners, quote, the right to capture and use the underground water beneath their land for a beneficial purpose on that land. The district court said the exact same thing. Excerpt of Record 1, page 6, footnote 4. The court says that the definition of reasonable use is, under the farmer's case, it holds that, quote, the water can only be removed from the ground if the water, once removed, will be used for the beneficial reasonable use of the land from which it was removed. And that's why, under Section 518A3, one of the conditions proceeding to getting a dewatering permit is DWR concluding that the groundwater to be withdrawn pursuant to the permit will be used beneficially by that person applying. It's not the beneficial use of your land. It's the beneficial use of the water you're pumping from the land, because that's the whole point of the Groundwater Code, protecting Arizona's groundwater and protecting other groundwater users who have the right to withdraw it, which was the Brady's. So what we have here is, 20 years ago, the legislature saying injured landowners do have a remedy. And under Section 545, you don't presume injury or impairment to a landowner's water supply, but that's a rebuttable presumption that the Brady's certainly supplied in this case. Secondly, I would note that the Arizona Supreme Court, in the Chino Valley case in 1981, a year after the Code was promulgated, said that, quote, the right of the owner to groundwater underlying his land is to the use of the water and not to the water itself. Close quote. Abbott relies on Cheatham from 1953. Let's talk about the Arizona Supreme Court's case after 1980, when the Code was promulgated, and the Supreme Court says you don't own the groundwater, so you can't prosecute a constitutional taking argument. I've been waiting for you to catch your breath. I'm sorry. I'm going to ask you to tell us what you think the bottom line should be in this case. And the reason I want you to tell us is he's coming to rebut, and he wants to tell us why you're wrong. So tell us what you think the bottom line should be. What should we decide? The bottom line is— Other than affirm, though that's what you want us to say, but— I'd sure love to see an affirm, Your Honor. But what should we say, so far as you're concerned? I think this Court could say it's clear from the Arizona Groundwater Code that the Arizona legislature intended injured landowners whose use of footright to the groundwater has been injured or destroyed by someone pumping in violation of their permit has a remedy under Arizona law. And that remedy is, whether you want to call it a common law remedy or a statutory remedy, there is a remedy. Because what Abbott argues to the opposite is there is no remedy. But 635 requires DWR to take the civil penalties under subsection D and deposit them into the state's general fund. Now, Abbott's argument eviscerates section 545. What does 545 mean? I think you've answered the question. All right, your time's up. Thank you. Do you understand your difference, Mr. Plowmaster? I'm sorry, Your Honor? Do you understand where you differ? Yes, I believe I understand where we differ. I'd like to answer some of the Court's questions in his last statement. What does 545 mean? And that's the section for damages under the Code. And what that is is a section for damages under transportation where you transport between subbasins. That's not what occurred here. Next is the inconsistent position that you've heard Mr. Keogh take up here today. One, he says they didn't bring statutory claims. They brought common law claims. Under the common law, the doctrine of reason... Well, just a minute now. In this case, there was transporting. No, Your Honor. Well, you didn't put it in the basin like you said you would. You put it in a canal or something, so it was transported out of the basin, right? No, Your Honor. Where did the water go? It went off the property, but that's not outside the subbasin. Didn't it go outside the subbasin? No, Your Honor. No evidence in the record that it did. On that issue, your position is that 45, 545 doesn't apply because this is not a transportation case? Correct, Your Honor. All right. Because they've never pled nor proved that this water went out of a subbasin, across the subbasin boundary. Clearly, it went off the property. So they don't bring a statutory claim, and we've never argued statutory immunity. We've argued, one, they didn't bring a statutory claim. You've heard that he said he did not. And, two, he brought a common law claim. The common law is clear that if you withdraw groundwater to make beneficial use of your property, no liability attaches, even if you dewater your neighbor's farm. This is not a case where water is being used somewhere else. You know what I think your difference is, and you can tell me whether I'm right or wrong. As I understand his point, that's true, beneficial, everything you said is so, so long as the subject matter is the water. In other words, if you needed the water, or you were going to use it, or you had some purpose for it, then it's too bad for him if you're using it. That's incorrect under the common law, and I'll just briefly cite. But he reads the statute, and the statute says, you know, putting the water to beneficial use, right? It says that at points, but, again, putting the water to a beneficial use, if it's, is that maybe letting the water percolate back into the ground, which occurred here, whether on or off the property, in the same subbasin. And the common law is clear that you don't have to, quote, use the water. The city, Evans v. City of Seattle, you also have the Bayer case, the Teller case. My time's up, unless you have other questions. Thank you. Thank you, counsel, both, for your excellent argument. This matter will now stand submitted. The last matter on calendar, Lisa D. Coatney v. Las Vegas Metropolitan Police Department, case number 0415475, has been submitted on the briefs in this matter, and will stand submitted at this time. Court is now in recess until tomorrow morning at 9 o'clock. Thank you.
judges: Farris, Tashima, Callahan